# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **PROJECT ON GOVERNMENT OVERSIGHT, INC.**<br>1100 13th Street, NW<br>Suite 800<br>Washington, DC 20005<br><br>   **Plaintiff**,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF JUSTICE**<br>950 Pennsylvania Ave., NW<br>Washington, DC 20530 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 220 and 2202, for injunctive, declaratory, and other appropriate relief. Plaintiff Project On Government Oversight, Inc. ("POGO") challenges the failure of the Federal Bureau of Investigation ("FBI"), a component of the United States Department of Justice ("DOJ"), to provide POGO with all non-exempt documents responsive to a FOIA request POGO filed with the FBI seeking records concerning the agency's Insider Threat Office.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3.      Venue lies in this district under 5.U.S.C. § 552(a)(4)(B).

## PARTIES

4.      Plaintiff POGO is a nonpartisan independent organization based in Washington,

D.C. and organized under section 501(c)(3) of the Internal Revenue Code. Founded in 1981,

POGO champions reforms to achieve a more effective, ethical, and accountable federal

government that safeguards constitutional principles. POGO's investigators and journalists take

leads and information from insiders and verify the information through investigations using

FOlA, interviews, and other fact-finding strategies. POGO's investigative work has been

recognized by Members of Congress, executive branch officials, and professional journalism

organizations. For instance, in 2015, POGO won the Robert D.G. Lewis Watchdog Award, the

Society of Professional Journalists Washington, D.C. Professional Chapter's highest journalistic

award, for reporting on the Department of Justice's opaque system for handling allegations of

attorney misconduct within its ranks. In 2018, POGO won an award from the Society for

Advancing Business Editing & Writing for its investigative series scrutinizing the government's

oversight of offshore drilling. POGO extensively used records obtained under FOIA for both

investigations.

5.      Defendant DOJ and its subcomponent FBI are federal agencies within the

meaning of FOIA. 5 U.S.C. § 552(f), and have possession, custody, and control of the records

POGO seeks in this action.

## STATUTORY BACKGROUND

6.      FOIA requires federal agencies, upon request, to make records "promptly

available to any person," 5 U.S.C. § 552(a)(3)(A), unless one or more specific statutory

exemptions apply.

7.      The agency must provide the public records when they are requested in order "to ensure an informed citizenry, vital to the functioning democratic society." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).

8.      For non-expedited requests an agency must make a determination on a FOIA request within twenty business days and notify the requester of which of the requested records it will release, which it will withhold, and why, and the requester's right to appeal the determination to the agency head. 5 U. S.C. § 552(a)(6)(A)(i).

9.      The twenty-day deadline for an agency to make a determination on a request begins on the earlier of: (l) the date "the request is first received by the appropriate component of the agency" or (2) "ten days after the request is "first received by any component of the agency that is designated in the agency's regulations . . . to receive [FOIA] requests." 5 U.S.C. § 552(a)(6)(A)(ii).

10.      In "unusual circumstances," an agency may extend the time limits the FOIA prescribes by written notice to the person making such request that sets forth the reasons for such extension and the date on which a determination is "expected" to be dispatched. The FOIA defines "unusual circumstances" as: (1) the need to search for and collect records from separate offices; (2) the need to examine a voluminous amount of records required by the request; and (3) the need to consult with another agency or agency component. 5 U.S.C. § 552(a)(6)(B)(iii). No such notice shall specify a date that would result in an extension for more than ten working days. 5 U.S.C. § 552(a)(6)(B)(i).

11.      If an agency does not respond to a FOIA request by the statutory deadline, the requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review. 5 U.S.C. §§ 552(a)(6)(C)(i), 552(a)(4)(B).

**FACTUAL BACKGROUND**

12.     The FBI's mission is to protect the American people and uphold the U.S.

Constitution. According to the FBI, its mission priorities are:

1. Protect the U.S. from terrorist attack;
2. Protect the U.S. against foreign intelligence, espionage, and cyber operations;
3. Combat signifiant cyber criminal activity;
4. Combat public corruption at all levels;
5. Protect civil rights;
6. Combat transnational criminal enterprises;
7. Combat significant white-collar crime; and
8. Combat significant violent crime.

https://www.fbi.gov/about/mission.

13.     The FBI is bound by guidelines issued by the attorney general that establish a

consistent policy on when an investigation may be initiated. Through these guidelines, the FBI

obtains authorization to collect information. The facts are analyzed and then used to prevent

terrorist activity and, whenever possible, to aid in the arrest and prosecution of persons or groups

who have violated the law. https://www.fbi.gov/investigate/terrorism.

14.     The approach taken by the FBI in counterterrorism investigations is based on the

need both to prevent incidents where possible and to react effectively after incidents occur. The

FBI's investigations focus on the unlawful activity of the group, not the ideological orientation of

its members. When conducting investigations, the FBI collects information that not only serves

as the basis for prosecution but also builds an intelligence base to help prevent terrorist acts.

https://www.fbi.gov/investigate/terrorism.

15.     "Threats…can come from outside the FBI, such as foreign intelligence agencies

or international or domestic hackers, as well as from inside the FBI, such as employees and

contractors with access to national security-related information."

https://oig.justice.gov/reports/2017/a1735.pdf.

16.     In October 2011, President Obama issued Executive Order 13587, which

established the National Insider Threat Task Force ("NITTF") under joint leadership of the

Attorney General and the Director of National Intelligence. The president directed federal

departments and agencies with access to classified information to establish insider threat

detection and prevention programs, and the NITTF to assist agencies in developing and

implementing these programs. https://www.dni.gov/index.php/ncsc-how-we-work/ncsc-nittf.

17.     In November 2012, following an extensive interagency coordination and vetting

process, the president issued the National Insider Threat Policy and the Minimum Standards via

a Presidential Memorandum. https://www.dni.gov/index.php/ncsc-how-we-work/ncsc-nittf.

18.     The National Insider Threat Policy aims to strengthen the protection and

safeguarding of classified information by enabling flexible implementation across the executive

branch. https://www.dni.gov/files/NCSC/documents/nittf/National_Insider_Threat_Policy.pdf

19.     In 2014, the NITTF published its "Guide to Accompany the National Insider

Threat Policy and Minimum Standards" to orient U.S. Government departments and agencies to

the various concepts and requirements embedded within the national program.

https://www.dni.gov/files/NCSC/documents/nittf/NITTF-Insider-Threat-Guide-2017.pdf.

20.     In response to ever evolving needs to support the mission to protect against

insider threats, NITTF released the 2017 Guide: A Compendium of Best Practices to Accompany

the National Insider Threat Minimum Standards. https://www.dni.gov/files/NCSC/documents/

nittf/NITTF-Insider-Threat-Guide-2017.pdf.

21.     Rachel Rojas was named assistant director of the FBI's Insider Threat Office in

November 2021. https://www.fbi.gov/about/leadership-and-structure/rojas.

22.     On August 14, 2023, Janeen DiGuiseppi was named assistant director of the

Insider Threat Office at FBI Headquarters in Washington, D.C. https://www.fbi.gov/news/press-

releases/janeen-diguiseppi-named-as-assistant-director-of-the-insider-threat-office.

23.     NITTF has since released the 2024 "Guide: A Compendium of Best Practices to

Accompany the National Insider Threat Minimum Standards." This product is an update to the

2017 "Guide to Accompany the National Insider Threat Policy and Minimum Standards," but

with new emphasis on alignment with the national minimum standards so that departments and

agencies can fully interpret and meet all the requirements.

24.     One of the requirements outlined in the 2024 guide is to ensure the establishment

of guidelines and procedures for the retention of records and documents necessary to complete

assessments required by Executive Order 13587. https://www.dni.gov/files/NCSC/documents

/nittf/20240926_NITTF-Insider-Threat-Guide.pdf.

25.     To meet the required standard:

> The records generated in support of insider threat programs must be
> created, collected, retained, and disposed of in accordance with
> appropriate laws and guidelines set forth by your agency and the
> National Archives and Records Administration (NARA). To satisfy
> this requirement, two published and approved documents are
> necessary: a System of Records Notice (SORN) and appropriate
> records retention guidelines. The SORN is required before retaining
> any insider threat records containing Personally Identifiable
> Information (PII) while record retention guidelines dictate retention
> periods and destruction schedules of records.

https://www.dni.gov/files/NCSC/documents/nittf/20240926_NITTF-Insider-Threat-Guide.pdf.

*Plaintiff's March 15, 2024 FOIA Request*

26.     On March 15, 2024, via FOIA.gov, Plaintiff submitted a FOIA request seeking the

emails of the FBI's Insider Threat Office's Senior Officials.

27.     Specifically, Plaintiff requested:

All emails (including attachments) in the possession of your agency's Designated Senior Official(s) (or acting as such) in charge of the agency's Insider Threat office/program since January 1, 2020 that contain one or more of the following terms:

- "anti-government",
- "domestic terror",
- "domestic terrorist",
- "domestic terrorism"
- "extremism",
- "extremist",
- "January 6",
- "J6",
- "militia",
- "neo-Nazi",
- "Oath Keepers",
- "pro-Nazi",
- "Proud Boys",
- "supremacy",
- "supremacism",
- "supremacist",
- "Three Percenters",
- "sedition",
- "white nationalist", and/or
- "white nationalism".

28.    POGO requested a fee waiver explaining that it has no commercial interest in the requested records, which will serve the public interest by contributing to public understanding of operations of the federal government and a better understanding of federal government efforts to address extremists in a significant way.

29.    Moreover, as POGO explained, there is a public interest in the disclosure of the records sought because the public is interested in how federal agencies are addressing insiders who may be engaged in extremist acts or who have ties to extremist organizations that may not be committed to upholding the Constitution or may pose other threats to the integrity of government operations and equal protection under the law. The records sought will shed

significant public light on and contribute to the public's understanding of concerns related to extremism in government since the records requested are generally not public.

30.     On March 21, 2024, the FBI mailed POGO a letter confirming that the agency received the request and assigned it the tracking number 1622829-000. The letter also classified POGO as a representative of the news media and stated that POGO's request for a public interest fee waver was under consideration.

31.     On the same day, in a separate letter, the FBI informed POGO that "unusual circumstances" applied to the processing of the request and requested that Plaintiff reduce the scope of the request to accelerate the process.

32.     In a March 27, 2024 email to the FBI, Plaintiff agreed to narrow the scope of the request to, "[c]ompilations of cases, statistics, internal assessments, and final guidance and policy documents regarding extremism insider threats created since January 1, 2020, in the possession of the FBI's senior insider threat official(s)."

33.     On March 29, 2024, the FBI replied to Plaintiff's email stating that the request to narrow had been received and forwarded to the assigned analyst for review and determination.

34.     On April 10, 2024, the FBI emailed Plaintiff seeking clarification on whether the request was being narrowed or if the parameters were being changed completely. Plaintiff replied that same day explaining that the revised request was a narrowing of the original request and not a different request.

35.     The FBI, via email, acknowledged Plaintiff's April 10, 2024 correspondence and clarification.

36.     To date Plaintiff has not received any additional correspondence from the FBI or any updates on the status of the request. A check of the status of the request on vault.fbi.gov lists

the process description for the request as, "[t]he FBI's FOIPA Program is searching the FBI's indices for potentially responsive documents. You may be contacted via formal letter for all fees and/or negotiation issues that may apply."

37.     Under U.S.C. § 552(a)(6)(C)(i), Plaintiff has now effectively exhausted all applicable administrative remedies with respect to its request.

**PLAINTIFF'S CLAIM FOR RELIEF**
**(Wrongful Withholding of Non-Exempt Records)**

38.     Plaintiff repeats and re-alleges paragraphs 1-37.

39.     Plaintiff properly asked for records within the custody and control of FBI.

40.     Defendant FBI wrongfully withheld agency records requested by Plaintiff by failing to comply with the statutory time limit for making a determination on Plaintiff's March 15, 2024, FOIA request of FBI.

41.     Plaintiff POGO is therefore entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of the records requested in its March 15, 2024, FOIA request at no cost to Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)     Order Defendant to immediately and fully process plaintiff's March 15, 2024, FOIA request and to disclose all non-exempt documents immediately and at no cost to Plaintiff;

(2)     Issue a declaration that Plaintiff is entitled to the immediate processing and disclosure of the requested records at no cost to Plaintiff;

(3)     Retain jurisdiction of the action to ensure no agency records are wrongfully withheld;

(4)     Award Plaintiff its costs and reasonable attorney's fees in this action; and

(5)      Grant such other relief as the Court may deem just and proper.


                                        Respectfully submitted,

                                        /s/Anne L. Weismann
                                        Anne L. Weismann
                                        (D.C. Bar No. 298190)
                                        5335 Wisconsin Avenue, NW
                                        Suite 640
                                        Washington, DC 20015
                                        (301) 717-6610
                                        Weismann.anne@gmail.com
Dated: January 17, 2025                 *Attorney for Plaintiff*